## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* SAMUEL WILLIAMS, APPELLANT.

*Evidence as to identity — when the mere impressions and thoughts of a witness cannot be given — right of an appellate court to grant a new trial in a criminal case although no proper exception was taken below — Code of Criminal Procedure, sec. 527, as amended by chapter 360 of 1882*

Upon the trial of the appellant for murder the prosecution sought to establish that one Cortright was seen at a certain time and place by one of the witnesses. The witness said that he passed a man at a certain time and place, and was allowed, against the prisoner's objection, to state that he "had an impression who it was; I don't know for certain, only who I thought it was; I thought it was William Cortright, but I don't know;" "I can't swear that this man was Cortright; I don't know whether it was him or not; it was my impression it was."

*Held*, that the court erred in receiving the evidence.

Under section 527 of the Code of Criminal Procedure, as amended in 1882, it is the duty of an appellate court to look into the proceedings upon the trial to discover whether any error has occurred, and, if such error is found, to award a new trial, whether any proper exception was taken in the court below or not.

After the court had charged the jury that they could not convict the defendant upon the testimony of his accomplice, unless it was corroborated by other evidence tending to connect him with the commission of the crime, the prisoner's counsel requested it to charge "that there must be evidence tending to connect the defendant with the commission of the offense; that this requires more than such evidence as merely raised a suspicion of guilt." The court refused to charge otherwise than as it had.

*Held*, that although under the former practice an exception to the refusal might have been unavailing because the request was too broad in including what had already been said to the jury, yet, that under the said section of the Code of Criminal Procedure, the court must be held to have erred in refusing to charge that the evidence must be more than sufficient to raise a suspicion of guilt.

APPEAL from a judgment entered in Wayne county, upon the verdict of a jury in the Oyer and Terminer of that county, convicting the appellant of murder in the first degree.

In the indictment, the appellant, Samuel Williams, a colored man, was charged with the crime of murder in the first degree, for having, on the night of January 6, 1882, caused the death of James Hall, a colored man, at Sodus Point, in the town of Sodus, in the county of Wayne. Hall kept a saloon at Sodus Point, on the borders of Lake Ontario, where he had sold liquors for many years. The saloon, or shanty, was built on piers over the waters of Sodus bay, and was built of pine, and connected with the main land by a bridge at one end, and the entrance door at the other was upon the water's edge. Hall had a house near by, where he lived with his daughters. It appears he was accustomed to carry and keep money with him, and that he frequently exhibited his money to persons in and about his place with whom he came in contact.

About seven o'clock he left his daughters to go to his saloon, and between eleven and twelve o'clock a fire was discovered in the shanty; and after the shanty was consumed, Hall's remains were found on the ice below the bottom of the shanty.

Jasper Newport, a colored man, who was then living at Sentell's, a distance of more than two miles from Hall's shanty, and who had previously worked in the saloon and knew that Hall had money and where he kept it, was called as a witness for the People, and gave evidence tending to establish that he and the accused, on the night of the sixth of January, entered the saloon of Hall for the purpose of robbing him, and that while there the accused struck a blow upon the head of Hall, and that a kerosene lamp was overturned, which kindled a fire in the building, and that there was also a can containing five gallons of kerosene oil within a foot or two of the place where the kerosene lamp was broken and blazed up. Jasper New port also testifies that Williams arrived at Sentell's on foot from the Ridge, three and one-fourth miles away, at about the time he was done milking, which was nearly seven o'clock, and that they went east to Sodus Point with Jasper's horse, and while there perpetrated the crime; and according to his testimony the crime was committed about eight o'clock.

The prosecution claim that the accused, on the evening of the murder, was in Sodus village in the early part of the evening, and again at about ten or fifteen minutes before nine o'clock, there being an interval of an hour and a-half to an hour and three quar-

ters between seven and nine o'clock that he was not seen in the village.

Martin Teeter, a witness, called by the People, testified on his redirect-examination as follows: "As you were going home, state whether you passed anybody on the walk on Maple street? Yes, there was a man on the east side of the walk when I went down; I passed him just south of the railroad track; he was walking very slow. Did you pay any attention to him after you passed him? Yes. What did you observe? (Objected to as incompetent.) Did it occur to you who the man was when you passed him? 'I had an impression who it was.' Who? (Objected to as incompetent. Received, and defendant excepted.) I don't know for certain, only who I thought it was; I thought it was William Cortright, but I don't know; I had known him for a number of years, and seen him frequently. After you passed this man what did you see with reference to him? (Same objection, ruling and exception.) He turned around and walked back south; no one was with him; he was within my view for about six rods, from the time I first noticed him till I turned and saw him going back; he was walking slowly. How long after you passed Cortright before you came to this man in the road? I had walked perhaps sixty or seventy rods. Recross-examined: You were called before the coroner on the tenth of January? Yes, sir. You didn't state this circumstance then? I think I did; I ain't sure; I can't swear that this man was Cortright; I don't know whether it was him or not; it was my impression it was. By the district attorney: It was your impression at that time? Yes, sir." Defendant asked that the testimony of this witness, about passing this man, be stricken out. Refused, and defendant excepted.

It was important for the prosecution to establish that Cortright was at the place where the witness claimed to have seen him at the time specified.

*S. E. Payn* and *E. A. Wooden*, for the appellant.

*J. Vandenberg*, district-attorney, for the respondents.

HARDIN, J.:

It is now provided by statute that the testimony of an accomplice is not sufficient to warrant a jury in convicting an accused

person of a crime. By chapter 360 of the Laws of 1882, section 399 of the Code of Criminal Procedure was amended so as to read as follows: "Section 399. A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

Prior to this statute a jury might convict upon the uncorroborated testimony of an accomplice, although courts were required, and it was their duty, to caution juries against rendering a verdict upon the uncorroborated evidence of an accomplice, and juries were advised not to convict on such testimony in the absence of confirmation of the material facts thereof by other evidence. (*People* v. *Costello*, 1 Denio, 83; *People* v. *Dyle*, 21 N. Y., 578; *Dunn* v. *People*, 29 id., 523; *Lindsay* v. *People*, 63 id., 154.)

In the case in hand we have found in the appeal book no direct and positive testimony, aside from that given by the accomplice, which connects the accused with the crime charged in the indictment; but many circumstances and some admissions and declarations of the accused, when considered in connection with the positive testimony of the accomplice, tending to implicate the accused in the commission of the offense. In the circumstantial evidence relied upon by the people to implicate the accused and corroborate the accomplice, is the testimony given for the purpose of establishing that William Cortright was seen at the time and place narrated by Martin Teeter. It appears by this witness' evidence that he said, viz.: "I cannot swear that this man was Cortright" whom he met; "I don't know whether it was he or not." When the witness was asked if he had an impression who it was, the defendant's counsel objected to it as incompetent. The objection was overruled, and the defendant excepted. The witness was permitted to answer, viz.: "I don't know for certain, only whom I thought it was; I thought it was William Cortright, but I don't know; I had known him for a number of years, and seen him frequently." After this ruling, the district attorney propounded the following question, viz.: "It was your impression at the time?" and the witnessed answered, "Yes, sir." Following this answer the appeal book shows that the defendant asked to have the testimony of this "witness about passing this man stricken out," and that

the court refused, and the defendant took an exception. In these several rulings occurring in the testimony of this witness Teeter, we think there was error. First. It expressly appears by the testimony that the witness was not able to identify positively or upon knowledge the person he met as that of William Cortright. The most that he could say was, that he had an impression who it was, and that he " thought it was William Cortright." We are of the opinion that such impression and such " thought " of the witness ought not to have been received, or, having been received, ought to have been stricken out upon the defendant's motion. (*People* v. *Wilson*, 3 Parker's Crim. Rep., 206.)

STRONG, J., says in the case last cited: " Ordinarily the question of identity is one of fact, and a witness may be asked whether he knows a particular individual, and if so, whether he is the person indicated ; but the question put to this witness is not the ordinary one of identity. It calls for an opinion relative to a body which, if that of the deceased, had been submerged in salt water for upwards of five months, and had undergone many changes. The witness can only state a conclusion drawn from the points of resemblance mentioned by him. The jury have heard his statements, and it is for them, and not the witness, to decide whether the body was that of the deceased captain." The question must be rejected.

Again, if a witness could be allowed to testify to an impression, to a " thought at the time," it would be difficult to predicate and establish perjury in respect to such answers. We are of the opinion that the usual course upon trials is to require the witness to state knowledge, recollection or memory of facts in respect to the identity of individuals, and not to allow them in the first instance, as evidence in chief, to state " impressions " or " thoughts," in respect to the identity of individuals. It appears to us the rule was departed from in receiving and retaining the testimony of the witness Teeter. We cannot say this erroneous evidence was not prejudicial to the rights of the accused. We are not able to say that it had no influence in producing the verdict rendered against the accused ; nor can we say that " if his evidence was struck from the case the proof of defendant's guilt " would be clear and overwhelming ; and we can say, therefore, that the rule found in the Gonzales case is not applicable. (*People* v. *Gonzales*, 35 N. Y., 58.)

*Second.* As amended by chapter 360 of the Laws of 1882, section 527 of the Code of Criminal Procedure provides, viz. : " * * * And the appellate court may order a new trial if it be satisfied that the verdict against the prisoner was (1) against the weight of evidence, or (2) against law, or (3) that justice required a new trial, whether any exception shall have been taken or not in the court below."

This is the first capital case which this court has been called upon to review under the provision of the section just quoted. Our impression is that it was the design of the legislature by this provision of law to allow the appellate court to order a new trial, if in any aspect of the case error was committed in the progress of the trial, and that the narrow and technical rules in respect to the exactitude of exceptions, was abrogated in respect to this class of cases. We must, therefore, look into the proceedings upon the trial to discover whether any error has occurred ; and if such error is found, we must declare the error, and allow it to produce a new trial " whether any exception shall have been taken or not in the court below," sufficient to formally and directly raise the question of alleged error or not under the previous strict and technical rules.

With this new statutory provision in mind, we turn to the charge of the learned judge in the case before us, and find that in laying down the rule under section 399 (*supra*), he stated the law correctly in the body of his charge, in two or three instances, which are pertinent to the question whether he properly refused to yield at the close of his charge to a request which was made of him. In the body of the charge he said, viz. : 1. " If there is any evidence tending to show that Cortright was connected with the crime, you are not to take it as against the defendant unless the evidence shows that the defendant was also connected with it." 2. " The law now provides that the corroboration must connect the defendant with the commission of the crime. In this case it must be corroborated by testimony tending to show that Sam Williams was the person who perpetrated the crime." * * * 3. " The evidence must also tend to show that Williams was there, and to fix upon him the guilt of the crime there must be some evidence outside of the story of Newport which will enable you to say that Williams was with Newport at the time the crime was committed. That

evidence the people have sought to give." 4. "The corroborating evidence must be such as tends, outside of the testimony of Newport, to point to the defendant."

Notwithstanding these statements, which appear in the body of the charge, the appeal book shows that the prisoner's counsel made a request of the court, viz.: "To charge the jury that there must be evidence tending to connect the defendant with the commission of the offense; that this requires more than such evidence as merely raised a suspicion of guilt;" thereupon the court refused, except as charged, and an exception was taken to such refusal. If this request was being considered under the rule which obtained before that laid down in section 527 (*supra*), perhaps it would be a good answer to say that the request was too broad; that it called upon the court to repeat what had already been stated, as we have seen in the quotations we have made in the body of the charge. But under the more liberal rule given to us by section 527, to which we have alluded, we are of opinion that the court erroneously refused to yield to that portion of the request which called upon it to say that the rule enacted in section 399 required more than such evidence as merely raised the suspicion of guilt. The court might, in response to that part of the request, well and properly have said that the rule described in section 399 required that the testimony of the accomplice should be corroborated in material points, and secondly, that it should be in respect to such matters as legitimately tended to establish that the accused was connected with the crime, and that, in establishing such connection with the crime, it was incumbent upon the people to give such evidence as legitimately and naturally carried conviction to the minds of the jury that the accused was connected with and was guilty of the offense charged, and that such evidence "as merely raised the suspicion of guilt," was insufficient to satisfy the requirements laid down in section 399.

There is a wide difference between evidence which tends to satisfy an intelligent jury that the accused has perpetrated a crime, and such evidence as merely tends to raise in the mind of the jury "a suspicion of guilt." We are of the opinion that such instructions as were requested ought to have been given by the learned trial judge to the jury in this case. We must, therefore, say that

justice requires a new trial, and that it is not material to determine that the exception taken is technically well founded under the practice which obtained prior to the amendment of 1882 of section 527 of the Code of Criminal Procedure.

As the views already expressed, lead us to order a new trial, we do not deem it necessary or useful to examine the numerous other grounds urged upon us in the argument of the counsel for the appellant.

Judgment and conviction reversed, and new trial ordered in the Oyer and Terminer of Wayne county, to which court these proceedings are remitted, with directions to proceed.

SMITH, P. J., and BARKER, J., concurred.

So ordered.